UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

HERMAN MILLER, INC.,
a Michigan corporation,

       Plaintiff,

v.

OFIS HOLDINGS, INC.,
a New York corporation,
d/b/a MAXWELL BLAKE

       Defendant.

CASE NO.

HON.

## **COMPLAINT**

Plaintiff Herman Miller, Inc. states for its complaint against Ofis Holdings, Inc. as follows:

### **PARTIES**

1.     Plaintiff Herman Miller, Inc. ("Herman Miller") is a corporation organized and existing under the laws of the State of Michigan having a principal place of business at 855 East Main Avenue, Zeeland, Michigan 49464.

2.     Defendant Ofis Holdings, Inc., dba Maxwell Blake ("MB") is a corporation organized and existing under the laws of the State of New York having a principal place of business at 200 S Newman St, Hackensack, NJ 07601.

### **JURISDICTION AND VENUE**

3.     This is an action for trademark infringement under 15 U.S.C. § 1114(1); for use of false designations of origin under 15 U.S.C. § 1125(a); for dilution under 15 U.S.C. § 1125(c);

for violation of the Michigan Consumer Protection Act, MCL § 445.903; and for infringement and unfair competition under Michigan common law.

    4.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Michigan pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

    5.     This Court has personal jurisdiction over MB under MCL §§ 600.711 and 600.715 because MB conducts substantial business in this forum and because this action arises, in whole or in part, from MB's transaction of business within the State of Michigan and its commission of tortious acts within the State of Michigan. Herman Miller has been harmed and continues to suffer harm in the State of Michigan from Defendant's acts.

    6.     Venue is proper in this district under 28 U.S.C. § 1391(b) and/or (c). On information and belief, MB has transacted business in this district, and a substantial part of the events giving rise to the claims occurred in this district.

## HERMAN MILLER'S INTELLECTUAL PROPERTY RIGHTS

    7.     For nearly ninety (90) years, Herman Miller has been a leader in the highly competitive business of designing, manufacturing, distributing, and selling high-quality, design-oriented furniture.

    8.     Herman Miller is renowned for its contemporary furniture designs and its furniture designs have been deemed works of art.

2

### *Herman Miller and Charles and Ray Eames*

9.     For decades, Herman Miller has developed close working relationships with preeminent contemporary furniture designers, one of the most notable of whom was Charles Eames.

10.     The creative genius of Charles Eames manifested itself in many ways, including photography, film making, architecture, and, most significantly, furniture design.

11.     Charles Eames and his wife, Ray Eames, became world-famous furniture designers and designed many of the items that comprise Herman Miller's furniture line. Charles and Ray Eames became celebrities. Authors have written dozens of books about them. The United States Library of Congress organized a travelling exhibit of the Eames' works in 1999.

12.     Herman Miller has used the "Eames" name, the name "Charles Eames" and the name "Ray Eames" and has created an intentional association with these names as used in connection with its furniture, since at least 1951. Examples include the EAMES® Chaise, the EAMES® Desk and Storage Unit (since the 1950s), the EAMES® Elliptical Table, EAMES® Executive Chairs, and the EAMES® Molded Plywood Chairs, among others, including those described below. These and other furniture designs have received numerous design awards.

13.     On January 26, 1982, the United States Patent and Trademark Office formally memorialized the association between the EAMES name and Herman Miller when it issued to Herman Miller U.S. Trademark Registration No. 1187673, for the EAMES® trademark. The registration provides Herman Miller with the exclusive right to use the EAMES® designation in connection with furniture. **Exhibit 1.**

*Herman Miller EAMES® Lounge Chair*

14.     Herman Miller has an industry-wide reputation for manufacturing and marketing the highest-quality contemporary furniture products, including being the exclusive source in the United States for EAMES® chairs and furniture.

15.     In 1956, Charles and Ray Eames designed the legendary EAMES® Lounge Chair and Ottoman, which is depicted below:



Herman Miller EAMES® Lounge Chair and Ottoman

See **Exhibit 2.**

16.     Since then, the New York Museum of Modern Art has made the EAMES® Lounge Chair and Ottoman part of its permanent collection. In addition, the famous EAMES® Lounge Chair and Ottoman has appeared on numerous television programs, such as NBC's "Today" show and Paramount Picture's "Frasier." In June, 2002, Fast Company named the EAMES® Lounge Chair and Ottoman as one of the fifteen (15) best-designed consumer products of the 20th century, along with Ford's Model T and the Swiss Army Knife.

17.     Since 1956, Herman Miller has extensively advertised the EAMES® Lounge Chair and Ottoman and has sold more than 100,000 of them, always associating Herman Miller as the source of the chair and ottoman.

4

18.     The distinctive design of the EAMES® Lounge Chair and Ottoman serves to identify Herman Miller as its source and is Herman Miller's trade dress and trademark.

19.     The famous EAMES® Lounge Chair is the subject of protection of U.S. Trademark Reg. No. 2716843 ("the '843 Registration"), legally issued to Herman Miller by the United States Patent and Trademark Office. The '843 Registration provides Herman Miller with the exclusive right to use the design of the EAMES® Lounge Chair in connection with furniture. See **Exhibit 3**.

20.     The trade dress of the EAMES® Lounge Chair and Ottoman is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace. The unique and distinctive look of the trade dress of the EAMES® Lounge Chair and Ottoman identifies and distinguishes it from competitors' chairs. The '843 Registration is incontestable.

21.     Herman Miller's trade dress for the EAMES® Lounge Chair and Ottoman represents highly valuable goodwill owned by Herman Miller.

*Herman Miller EAMES® Aluminum Group and EAMES ® Soft Pad*

22.     Charles and Ray Eames designed the EAMES® Aluminum Group chairs, and Herman Miller began producing them in 1958. Herman Miller has continuously produced the chairs since then. An example of the EAMES® Aluminum Group chairs is depicted below:



Herman Miller EAMES® Aluminum Group Chair

23.     In 1969, Charles and Ray Eames added cushions to the EAMES® Aluminum Group chairs, and Herman Miller has produced them ever since. These chairs are sold as the EAMES® Soft Pad chairs. An example of the EAMES® Soft Pad chairs is depicted below:



Herman Miller EAMES® Soft Pad Chair

24.     Since introducing the EAMES® Aluminum Group chairs in 1958, Herman Miller has invested millions of dollars in promoting the full family of EAMES® Aluminum Group and EAMES® Soft Pad chairs.

25.     The trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace. The unique and distinctive look of the trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs identifies and distinguishes the EAMES® Aluminum Group and EAMES® Soft Pad chairs from competitors' chairs.

26.     The consuming public and the commercial trade have come to recognize and associate the trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs with Herman Miller as a result of the extensive and continuous promotion and sales of the EAMES® Aluminum Group and EAMES® Soft Pad chairs over the past fifty years. As a result of these efforts, the trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs has acquired appreciable secondary meaning, and is indeed a famous design mark, which identifies and distinguishes the EAMES® Aluminum Group and EAMES® Soft Pad chairs from chairs offered by competitors.

27.     The United States Patent and Trademark Office recognized Herman Miller's exclusive, proprietary rights to at least some of the elements of the full family of EAMES® Aluminum Group and EAMES® Soft Pad chairs on June 20, 2006 when it issued to Herman Miller U.S. TM Registration No. 3105591 ("the '591 Registration"), covering the shape of the frame common to the EAMES® Aluminum Group and EAMES® Soft Pad chairs, as depicted below.



Drawing from '591 Registration

28.     The '591 Registration is now incontestable. The registration provides Herman Miller with the exclusive right to use the design of the EAMES® Aluminum Group chairs in connection with furniture. A copy of the registration certificate is attached as **Exhibit 4**.

29.     As a result of such extensive and exclusive use and promotion of the trade dress embodied in the EAMES® Aluminum Group chairs, the trade dress has developed appreciable secondary meaning and fame as an indicator that Herman Miller is the source of goods.

30.     Herman Miller's trade dress for the EAMES® Aluminum Group chairs represents highly valuable goodwill owned by Herman Miller.

***Herman Miller SETU® Chair***

31.     Prior to 2010, Herman Miller commissioned designers at Studio 7.5 in Germany to design a new office chair called the SETU® chair. The goal was to create a uniquely styled chair that provides improved support and comfort. An example of a SETU® chair is depicted below.



**Herman Miller SETU® Chair**

32.     The SETU® chair and its family of related chairs have enjoyed great commercial success based in large part on its distinctive look and its unique comfort and support.

33.     Herman Miller owns U.S. Trademark Reg. No. 3804457 in the SETU name for "office furniture, namely chairs." See **Exhibit 5**.

34.     Since the SETU® chair's release, Herman Miller has widely and continuously promoted and sold the SETU® chair.

8

35.     The United States Patent and Trademark Office recognized Herman Miller's exclusive, proprietary rights to at least some of the ornamental design elements of the SETU® chair on April 4, 2017 when it issued to Herman Miller U.S. TM Registration No. 5174864 ("the '864 Registration"), covering the three-dimensional configuration of the backrest of the SETU® chair with a curved edge at the top of the backrest connected to the seat of the chair with a curved front edge together forming the shape of a scroll and the shape of the armrests of a chair that resemble ribbons, as shown below.



Drawing from '864 Registration

36.     The '864 Registration provides Herman Miller with the exclusive right to use the design of the SETU® chair in connection with furniture. A copy of the registration certificate is attached as **Exhibit 6**.

37.     As a result of the extensive and exclusive use and promotion of the trade dress embodied in the SETU® chair, the SETU® trade dress has developed appreciable secondary meaning and fame as an indicator that Herman Miller is the source of goods.

38.     The SETU® trade dress is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace. The unique and

distinctive look of the trade dress of the SETU® Chair identifies and distinguishes it from competitors' chairs.

39.     Herman Miller's trade dress for the SETU® chair represents highly valuable goodwill owned by Herman Miller.

***Herman Miller Nelson Bubble Lamp***

40.     George Nelson, Herman Miller's former design director and architect, designed the Bubble Lamp in 1952. Since its inception, the Bubble Lamp has enjoyed great commercial success. An example of the Bubble Lamp is depicted below.



**Herman Miller Bubble Lamp**

41.     On April 5, 2011, the United States Patent and Trademark Office granted U.S. TM Registration No. 3939483 ("the '483 Registration") which protects at least some of the ornamental design features of the Bubble Lamp, as shown below. Herman Miller owns the '483 Registration.



**'483 Registration**

42.     The '483 Registration is now incontestable. The registration provides Herman Miller with the exclusive right to use the ornamental design of the Bubble Lamp in connection with electric lamps, lamp shades, and lamps. The registration certificate is attached as **Exhibit 7**.

<u>**MB'S UNLAWFUL CONDUCT**</u>

43.     MB owns and operates the website www.maxwellblake.com ("MB website"). MB sells chairs and other furniture online throughout the United States and the world, including in the State of Michigan.

44.     MB's website offers for sale, or has offered for sale, products that copy the distinct features of Herman Miller's trade dress protected designs online throughout the United States and the world, including in the State of Michigan.

45.     Herman Miller has sent three separate letters to MB informing them of their infringing activities and demanding that MB cease and desist such activities. MB has not provided Herman Miller with any formal response and has failed to comply with Herman Miller's demands.  See **Exhibit 8**.

46.     Without Herman Miller's permission, the MB website sells, offers for sale, or has sold or offered for sale a replica of the EAMES® Lounge Chair and Ottoman called the Baxter Lounge. The Baxter Lounge copies distinct features protected by the '843 Registration in a manner that is likely to cause consumer confusion, as shown in the comparison below.




**MB Baxter Lounge**                              **'843 Registration**

47.     The Baxter Lounge product page on MB's website admits that the Baxter copies the design of the Eames Lounge Chair and Ottoman. The first sentence in the Baxter product description states "[t]his is our reproduction eames lounge chair and ottoman." The product description further states "[t]his authentic-quality reproduction is virtually part-for-part, and measurement-by-measurement identical to the original lounge chair by Charles and Ray eames." See **Exhibit 9**.

48.     Without Herman Miller's permission, the MB website sells, offers for sale, or has sold or offered for sale numerous replicas of the EAMES® Aluminum Group™ and EAMES® Soft Pad chairs under the Lennox and Bond names. The Lennox and Bond chairs include:

    (a)     Lennox Office Chair

    (b)     Lennox Padded Management Chair

    (c)     Lennox Contract Conference Armchair

    (d)     Lennox Contract Executive Office Chair

    (e)     Lennox Contract Padded Management Chair

    (f)     Lennox Contract Padded Executive Armchair

    (g)     Bond Series Soft Pad Chair

    (h)     Bond Thin Pad Chair

    See **Exhibit 10.**

49.     On its website, MB admits that its Lennox and Bond chairs are "replicas" and "reproductions" of Eames office chairs. See **Exhibit 11.**

50.     The Lennox and Bond chairs copy the distinct features protected by the '591 Registration in a manner that is likely to cause consumer confusion, as depicted below.



MB Bond Chair          MB Lenox Chair          '591 Registration

51.     Without Herman Miller's permission, the MB website sells, offers for sale, or has sold or offered for sale replicas of the Herman Miller SETU® chair, including at least the MB Situ Chair and MB Situ 2 Chair. The MB Situ and Situ 2 chairs are depicted below alongside the '864 Registration and product pages from MB's website for each chair are attached in **Exhibit 12**.



MB Situ Chair          MB Situ 2 Chair          '864 Registration

52.     MB's use of the Situ and Situ 2 names, specifically to market and sell chairs similar to Herman Miller's SETU® chair, is likely to cause consumer confusion with Herman Miller's SETU® trademark registration.

13

53.     The Situ and Situ 2 chairs copy numerous features protected under the '864 Registration in a manner that is likely to cause consumer confusion, including but not limited to the one-piece mesh seat and backrest, the curved geometry at the intersection of the seat and the backrest, the curved front edge of the seat, the curved top edge of the backrest, and the ribbon-like shape and geometry of the armrests. These similarities are depicted in the figures below.



'864 Registration          MB Situ Chair          MB Situ 2 Chair

54.     MB's copying of the SETU® chair name and protected design has been intentional and with knowledge of the considerable reputation, goodwill, and fame associated with and represented by Herman Miller's registered trademarks. MB admits that its Situ chair is a knockoff of Herman Miller's design in its product description, which states that "Maxwell Blake's comfortable and affordable situ office mesh chair pays homage to the mid-century modern classic, Eames Aluminum Group Chair." and also "[t]his item is a replica. It is a reproduction of an original design." See **Exhibit 12.**

55.     Without Herman Miller's permission, the MB website sells, offers for sale, or has sold or offered for sale replicas of the Herman Miller Bubble Lamp under the Catherine Ceiling Lamp name. The Catherine Ceiling Lamp copies the distinct features protected by the '483

Registration in a manner that is likely to cause consumer confusion, as depicted below. See **Exhibit 13**.



MB Catherine Ceiling Lamp                    '483 Registration

56.     MB's copying of Herman Miller's trade dress has been intentional and with knowledge of the considerable reputation, goodwill, and fame associated with and represented by Herman Miller's registered trade dress. MB has ignored numerous demands by Herman Miller that MB cease and desist its infringing activities.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

57.     Herman Miller realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

58.     MB's use in commerce of Herman Miller's trademarks and trade dress, including MB's use of Herman Miller's SETU® mark (U.S. Trademark Reg. No. 3804457), copying of the Setu trade dress (U.S. Trademark Reg. No. 5174864), copying of the Eames Lounge Chair trade dress (U.S. Trademark Reg. No. 2716843), copying of the Eames Aluminum and Soft Pad trade dress (U.S. TM Registration No. 3105591), and copying of the Bubble Lamp trade dress (U.S. Trademark Reg. No. 3939483) without the authorization or consent of Herman Miller, is likely to cause confusion, to cause mistake, or to deceive.

59.     The foregoing conduct of MB constitutes trademark infringement in violation of 15 U.S.C. § 1114(1).

60.     MB's conduct as aforesaid has caused great and irreparable injury to Herman Miller, and unless such conduct is enjoined, it will continue and Herman Miller will continue to suffer great and irreparable injury.

61.     Herman Miller has no adequate remedy at law.

### COUNT II
### FALSE DESIGNATIONS OF ORIGIN UNDER 15 U.S.C. § 1125(A)

62.     Herman Miller realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

63.     MB's use in commerce of Herman Miller's trademarks and trade dress without the authorization or consent of Herman Miller is likely to cause confusion, to cause mistake, or to deceive the relevant public that products offered for sale by MB are authorized by or are affiliated with Herman Miller.

64.     The above-described acts of MB constitute use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion; to cause mistake; or to mislead as to the affiliation, connection, or association of MB or its goods or services with Herman Miller and the products sold under the trademarks or trade dress of Herman Miller in violation of 15 U.S.C. § 1125(a).

65.     MB's conduct as aforesaid has caused great and irreparable injury to Herman Miller, and unless such conduct is enjoined, it will continue and Herman Miller will continue to suffer great and irreparable injury.

66.     Herman Miller has no adequate remedy at law.

16

## COUNT III
## DILUTION UNDER 15 U.S.C. § 1125(C)

67.     Herman Miller realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

68.     MB's use in commerce of Herman Miller's trademarks and trade dress without the authorization or consent of Herman Miller is likely to create associations that will impair the distinctiveness of Herman Miller's trademarks and trade dress.

69.     The aforesaid acts of MB are likely to blur the distinctive quality of Herman Miller's trademarks and trade dress in violation of 15 U.S.C. § 1125(c).

70.     MB's conduct as aforesaid has caused great and irreparable injury to Herman Miller, and unless such conduct is enjoined, it will continue and Herman Miller will continue to suffer great and irreparable injury.

71.     Herman Miller has no adequate remedy at law.

## COUNT IV
## VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT

72.     Herman Miller realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

73.     The State of Michigan has an important interest in ensuring that persons and entities doing business with Michigan residents fully comply with Michigan laws.

74.     MB has knowingly made false and misleading representations as to the source of its goods or services and has knowingly made false representations as to its affiliation with Herman Miller.

75.     The aforesaid acts of MB constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of the Michigan Consumer Protection Act. MCL Laws § 445.903(1)(a)-(c), (e).

76.     MB's conduct as aforesaid has caused great and irreparable injury to Herman Miller, and unless such conduct is enjoined, it will continue and Herman Miller will continue to suffer great and irreparable injury.

77.     Herman Miller has no adequate remedy at law.

## COUNT V
## COMMON LAW UNFAIR COMPETITION–TRADEMARK INFRINGEMENT

78.     Herman Miller realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

79.     MB has used in commerce Herman Miller's trademarks and trade dress without the authorization or consent of Herman Miller, in connection with the sale and offer for sale of goods and services similar to those sold by Herman Miller.

80.     MB's use of Herman Miller's trademarks and trade dress is calculated to, likely to, and does in fact confuse and deceive consumers about the origin of MB's goods and services.

81.     The foregoing conduct of MB constitutes the infringement of Herman Miller's common law rights in its trademark and trade dress and unfair competition in violation of the common law of the State of Michigan.

82.     MB's conduct as aforesaid has caused great and irreparable injury to Herman Miller, and unless such conduct is enjoined, it will continue and Herman Miller will continue to suffer great and irreparable injury.

83.     Herman Miller has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Herman Miller respectfully requests that this Court enter judgment as follows:

84.     Preliminarily and permanently enjoining MB, its agents, representatives, employees, assigns, and suppliers, and all persons acting in concert or privity with it, from using Herman Miller's trademarks or trade dress, including Herman Miller's SETU®  trademark, Eames Lounge trade dress, Eames Aluminum and Soft Pad trade dress, SETU® trade dress, and/or Bubble Lamp trade dress, or any other names or marks or trade dress that is likely to cause confusion, to cause mistake, or to deceive with respect to Herman Miller's trademarks or trade dress, or from otherwise infringing or diluting Herman Miller's trademarks or trade dress including selling or offering for sale any products that use, infringe, or dilute Herman Miller's trademarks or trade dress, or from competing unfairly with Herman Miller;

85.     Awarding Herman Miller all damages to and costs incurred by it because of MB's infringing activities and other conduct complained of herein, together with all profits MB has made from such activities;

86.     Awarding Herman Miller treble damages and attorney's fees as provided under 15 U.S.C. § 1117;

87.     Awarding Herman Miller its attorney's fees and costs as otherwise provided by law;

88.     Awarding Herman Miller pre-judgment and post-judgment interest on the damages caused by MB's infringing activities and other conduct complained of herein; and

89.     Granting Herman Miller such other and further relief as the Court may deem just and proper under the circumstances.

19

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff, Herman Miller

Date: June 27, 2017                          By: s/*Bryan R. Walters*_____
                                                  Bryan R. Walters (P58050)
                                             Business Address and Telephone:
                                                  Bridgewater Place, P.O. Box 352
                                                  Grand Rapids, MI 49501-0352
                                                  (616) 336-6000
                                                  brwalters@varnumlaw.com

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Herman Miller requests a trial by jury of any issues so triable by right.

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff, Herman Miller

Date: June 27, 2017

By: s/*Bryan R. Walters*
    Bryan R. Walters (P58050)
Business Address and Telephone:
    Bridgewater Place, P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    brwalters@varnumlaw.com

11767530_3.docx